And in our next case for argument, 1-800 Contacts, Inc. v. JAND, J-A-N-D, I guess, Inc. And whenever you are ready. Thank you, Your Honor. Stephen Fischbein for the appellant, 1-800 Contacts. 1-800 Contacts is the leading online retailer of contact lenses in the United States. 1-800 Contacts has invested hundreds of millions of dollars in marketing, promotion, and customer service. That investment, which the trademark law and policy encourages, has resulted in millions of customers using 1-800's trademarks to search the Internet for 1-800 Contacts' website. The crux of this case is that when consumers use the marks to find the website, they're expecting to find the website. Warby Parker has hijacked that consumer interest in 1-800 Contacts by paying Google to insert its own ad instead of the 1-800 website, which is what the consumers are expecting. Now, contrary to the district court's finding below. One thing I was unsure about is this is, I guess, referred to as an initial interest confusion claim? That's part of our claim. Part of it. Well, that's what I'm trying to find out. Okay. What is the claim? I mean, in looking at the claim, am I comparing the two websites and deciding whether they are confusing or likely confusing, or to what extent does this initial interest confusion come into play? Am I comparing 1-800 Contacts to Warby, or am I comparing 1-800 Contacts to 1-800 Contacts? I'm a little unsure.  I understand, Your Honor. Yeah. There are several types of confusion. We allege source confusion, meaning confusion as to who you're buying it from, and also a confusion as to whether Warby is somehow associated with 1-800 Contacts. That's the type of confusion. There's a separate issue as to, temporarily, when in time the confusion occurs. And we allege both that there's initial interest confusion, which is actionable whether or not at the end of the purchase cycle the consumer actually understands where they're purchasing from. So from a timing basis, it's initial interest confusion and point-of-sale confusion. And you're saying the initial interest confusion is enough in itself to support an infringement claim? Yes. I'm sorry, just to follow up on that. So your view is, because I have questions about the timing portion of this as well, if, in fact, the websites that we concluded they were not at all, there's no confusion from that, does your claim fail if that happens? I mean, I understand you're saying, or I think what you're saying is that the problem or the initial confusion starts, perhaps, with the keyword search, and then the ad comes up and then goes to the home page. But if we disagree on the similarity or confusion as to the website, the home pages, do you still have an argument? Yes. Yes, we do. And this circuit pioneered and basically established and described this initial interest theory in the Steinway case from the 70s and the Mobil Oil case from the 80s. And I just want to emphasize that in both of those cases, there were facts and the defendants argued very, very strongly that by the time of purchase, the consumer would absolutely know who they were purchasing from. So like in Mobil Oil, these are contracts worth millions of dollars, oil trading contracts. And there was evidence that when you actually sign the contract, Mobil does not require a letter of credit, but this upstart defendant did. And so based on the paperwork, people would naturally understand that. The district court said, I understand that, but the harm is done if you attract interest and consideration of the consumer based on confusion as to a trademark. And this circuit affirmed, and it's the same exact reasoning in the Steinway case. I have a little difficulty, though, with applying, I mean, those are useful concepts, but, you know, that's the 70s and the 80s, and we're now talking about a very different world with internet search and the search engines whereby the regulatory authorities, the FTC and what have you, allow search word auctions and use of trademark in that way, even though it's in commerce and you could take a different position, that you can't have the non-trademark holder purchase the rights to have that response to a search engine. And I gather, you know, it's somewhat more complicated than that because general retailers, you know, Macy's wants to be able to say we're selling Reebok sneakers or what have you. And so understandings have developed, but the rule is that they can conduct these auctions and allow competitors to purchase the keyword search rights to position on the initial response page. So isn't your quarrel kind of with that regime rather than with Warby Parker in particular? Your Honor, I have to disagree that there's any legal regime. Certainly the FTC in no way, shape, or form has ever said you're allowed to bid on other people's trademarks with abandon. And there's many cases where it's been found to be trademark infringement depending on the circumstances. But there aren't enforcement actions. There's no rule that's been promulgated saying you can't, that the search engines can't conduct these auctions, right? There hasn't been a rule saying that you can't. There hasn't been a rule saying that you can. And it comes down to all the circumstances. It's been happening for a decade, right? And there's been lawsuits. And 1-800 and other companies have brought lawsuits and they've been successful in many cases. And in fact, in this Court's decision in 1-800 contacts versus the FTC, the FTC's position was that these lawsuits are by their nature meritless and so that settlements are necessarily an antitrust violation. And this Court said no, that this is fair grounds for litigation. And depending on all the circumstances, there can be trademark infringement. Well, and what about the fact that the sponsored results are identified as ad-sponsored, ad-sponsored, until you get down to the organic results with everything else? As of the time of our complaint, and if you look at the snapshots, it doesn't say sponsored. It says ad, and so that's what we were dealing with then. The ad is in very, very small type. And look, 1-800 does ads too. And so if I'm a consumer and I type in 1-800.com, I am looking to go to that website. It's not shocking that I see ads and I sort of expecting 1-800 contacts. I see an ad that says 20% off contacts and I click on it. And the fact that it's an ad doesn't dispel confusion because 1-800 contacts has ads too. But when you do click on this, at the top of the page it says Warby Parker. It does. It's, you know, it's very interesting. There's no dispute that their landing page is different for the people that come in searching for 1-800 contacts versus searching for Warby Parker. No dispute about that. And there's also no dispute. But if both are labeled Warby Parker, why does that make a difference? But why have two different landing pages for the exact same thing and have a separate one only for the people coming in from 1-800 contacts that looks more like the 1-800 contact site? But what's the real likelihood of confusion if it's adequately labeled that it's Warby Parker? This is on a motion for judgment on the pleadings. So there's no fact discovery. You know, this is supposed to be taking all the inferences in favor of the plaintiff. We have a strong mark. We have the direct competitors, the exact same product. And consumers, we allege in the complaint that when they search for 1-800 contacts, that is navigational. They are looking for a specific site, not information about contact lenses. And there's a lot of empirical research to support that. So given their expectations, given what they're expecting, Judge Chin, you asked should we just compare them. That's not the context. The context is the consumer who's already decided, I want to go to 1-800contacts.com. The confusion is, so, and I tried this last night. You know, I Google 1-800 contact. And the first thing that shows up, it's a little bit different now. It says sponsor. Yeah. But it's Warby Parker. Correct. Is the confusion that a consumer might believe that she is in the 1-800 website? The confusion is that having looked for, let's take somebody that searches for 1-800.com. That is the only way a consumer can go find the website because they don't have brick and mortar stores. The way you go to 1-800contacts is to put in 1-800.com. And so they do that and they're expecting to see results of what they look for, 1-800.com. They see an ad that says 20% off contacts. Yes, they click on it thinking that it's 1-800contacts. Now they get to this special website that's different than the one that Warby Parker usually uses that is certainly similar in some ways to 1-800contacts. But if it's labeled Warby Parker, why does it matter? Go ahead. Because, and that's the initial interest confusion, okay? So like for example, in the Steinway case, they made the same argument. And what this circuit said is the very fact that you have now taken the consumer's time and attention and focused on a product, usurping the goodwill of the original trademark owner, that's actionable. And what I would say to you is, okay, so maybe they go to the Warby site and they look around and they say, hey, this is pretty cheap, this is okay, and they purchase. And maybe by the time of purchase, they do recognize it's Warby Parker. But they wouldn't have gotten there and they wouldn't have given their time and attention without the initial confusion of the initial ad. So this isn't in the record, I don't think. But, so if I search Warby Parker, has 1-800contacts bought ads so that 1-800contacts also shows us a response? No. 1-800contacts is not in that business. They've been on the other side of that issue. We've brought a number of lawsuits. And just, my time is up, but Judge, you had mentioned that this is different from Steinway's in 1975, but it's different in a lot of ways. And the value of eyeballs on the internet and what they call clicks is absolutely enormous. I mean, Google makes billions and billions of dollars a year, and it's all based on where the consumer clicks when they go, when they do a search. That is what's extremely valuable, because everybody recognizes, once you get the click, once they click on your website and you've drawn them in and they're considering your offering, they're likely to purchase, and that's where the confusion is. When somebody is expecting, which we allege, as a matter of fact, we allege that if you search for that, you're expecting 1-800contacts, and they get this other thing and it's not clearly distinguished, there's confusion. And is that necessarily so in a day where people have been buying on the internet, especially with the pandemic, you know, all the time? And so we have consumers who are not befuddled. They're used to doing all their acquisitions on the internet. Why are they going to be likely confused? So, you know, we have some consumers who are befuddled, who are not befuddled, but we have some consumers who are. And I'll end with, I think, in this case, the district court's findings on that issue, on consumer sophistication, are particularly troublesome and inappropriate, because the internet, I mean, it's constantly changing. It's completely dynamic, as Judge Chin pointed out, just the way they label ads changes. It's multifaceted. You've got organic results. You've got ad results. And the experience of consumers varies dramatically based on age. I mean, my children have a very, very different experience than I do, trust me. Profession, whether you deal with the internet in your profession, education, technical ability, all those things. And that is why this is a fact question. And a particular judge, whatever experience he or she brings to it with their background, Judge Costell obviously felt that, yeah, like if it says Warby in the URL, people will notice that. But it is not for the judge to substitute their armchair impression for what is really evidence on this. It has to do with the plausibility of your experience. You know, testimony, examples of actual confusion, which we would get in discovery. And this is exactly the situation where a lay jury chosen by the parties with diverse perspectives should weigh in on these extremely important issues of what is the consumer experience on the internet. I do not think that's a foregone conclusion. And it's certainly not judicial notice. I mean, judicial notice is Monday, you know, June 12th was a Monday. At what time did the sun set? This is hotly, hotly debated question of what the consumer's reaction would be when they expect 1-800-CONTACT because that's what they search for and they get this other ad that doesn't say we're not 1-800-CONTACT. And forgive me, I may have just forgotten, but does your complaint include any proffer of an expert who has done surveys reflecting the confusion that you say a jury might find? Not at the complaint stage, but we have evidence of bad faith. And of course, if we're able to prove bad faith, then actual confusion would be presumed. And we certainly allege that consumers. But you have no factual basis particularly for the allegation that people are in fact confused. Well, we, I think the allegation that there was a deliberate effort to set up a separate page, which they are paying a lot of money to get that first position. And I think the fair inference is that they're doing that and they set up the separate page because it works, because they are siphoning off our customers. So that is where we play. Thank you. Thank you. I may have pleased the court. Roxanne Elings with Davis Wright Tremaine for Appellee, Jandine DBA Warby Parker. Virtually no court has held that on its own a defendant's purchase of a plaintiff's mark as a keyword term is sufficient for liability. Trademark infringement must take into account the practicality of the real world. And in the context of internet ad words, the practicalities of the commercial world is that an appreciable number of consumers are not likely to be confused. And that's key, appreciable number. Is that a factual question, whether an appreciable number of consumers would be confused here? And how do we deal with it at the pleading stage? Well, I believe at the pleading stage, there are other courts that have similarly held where the defendant's advertisement is labeled as an ad. Defendant's advertisement contains the defendant's own.  And it alleges that once customers reach the Warby Parker page, some customers are confused. So I believe that's a conclusory allegation. The decision here is in line with. That's not a factual allegation. Some customers are confused. Well, an appreciable number of consumers are confused. But when you look at the other allegations, including the websites, the fact that, as I said before, labeled ad doesn't have the Warby, has Warby Parker and Warby Parker. Was the district court making a finding of fact when it concluded that these days consumers are so sophisticated and know the internet so well that they are not likely to be confused or that not an appreciable number would be confused? Is that not a finding of fact? Well, I believe in the context of all of the allegations here, even if that were a finding of fact, which I do not believe it is. You don't think that's a finding of fact? Given the context here, I would say, and I guess I want to go back to the context, is that you've got Warby Parker at the top of the webpage, right? And Warby Parker in the ad itself. Nowhere does 800 contact show up except as an ad word, which is legal in this day and age. The Tenth Circuit, in a case involving- The current one, when I did it last night, it was pretty clear that it was Warby Parker. When I look at the one in the complaint, it's much harder to see Warby Parker. The words are much smaller. And then I suppose there's also the argument that maybe Warby Parker is associated with 1-800. There's nothing in the allegations that- There's nothing that alleges that they are associated. What would make someone- Well, they're not alleging that they are associated. They're alleging that people might think they are associated. Right. My point is, is there's no factual allegations that support that legal conclusion. So the Tenth Circuit, in a case involving appellant here, affirmed summary dismissal of a claim of infringement in the similar circumstances in 800contactsvslens.com where plaintiff's marks did not appear in the keyword advertisement. So at the pleading stage, again, where it's labeled an ad, it has the defendant's name in the link, and the website has defendant's name clearly labeled above, virtually no court has held, and many have held at this stage, that there is no- that they've held judgment on the pleadings. So, for example, the Southern District has done so in Alzheimer's. I would also just note that the idea of initial interest confusion, the Second Circuit has specifically recognized that even if a plaintiff's potential customers are diverted by keyword advertising to defendant's competing website, the customer can quickly become aware of the competing source's actual identity and rectify the mistake. And that's diversion, not confusion. It's Kid Car vs. Kid Moto in the Southern District, also cited Sabin for that. Your adversary points to our cases from the 70s and 80s involving Steinway and Mobil and says it doesn't matter if at the end of the day the purchaser knows that the actual provider is not what they initially thought. How do you distinguish those cases? So, and I can't recall the case that distinguishes this, but it's sort of like going down a highway, you see a sign that says, you know, defendants off, you know, off this ramp, you drive off, or plaintiffs off this ramp, you drive off, you drive miles to get there. It's the plaintiff. And it's a different world. As you said, it's not the 70s, the 80s, it's the world of the internet. And if anything, it's diversion and not confusion. Is your view, though, and it may not be, that this initial interest confusion theory has no application to these types of searches? It only, if there is intent, there may be. So the types of websites, for example, where there has been found to be infringement or confusion is where, for example, you click on a site and somehow you tie into a call center. Or where the ad is not clearly labeled, and then you go to the site and it has the plaintiffs. Well, their position here is, I think, part of what they're relying on is that the district court's saying there's some basis for finding bad faith, given the distinct website that you are landed to when you click on one of these ads. That this Warby Parker page is different than if you just put in Warby Parker contacts. And that that at least suggests some bad faith. What's your? And the court took note of that, the allegations of that, that it noted some bad faith. But bad faith doesn't equal likelihood of confusion. And trademark infringement, the core of it is whether consumers are confused. So you might even have someone acting bad faith, but they haven't confused the consumer. Even assuming that, right? So in the cases. But does that go to, I mean, I think earlier you said that you weren't rejecting that the initial interest confusion is, you're not saying that that's no longer valid, but that it can be valid in this type of context when combined with intent, deceptive or what have you. But the type of intent that is found in the other cases is where, like for example, CJ Products versus Snuggly, where the defendant changed their website to Pillow Pets, which was the trademark of the plaintiff. And then used Pillow Pets on their website itself. Another one is Adler, out of the Fifth Circuit, where they used generic ads. What about the Select Comfort case out of the Eighth Circuit? Seems pretty similar. The complaint was dismissed. The Eighth Circuit vacated and remanded, holding that a jury question existed as to the issue of consumer sophistication. And therefore, a plaintiff should not be barred from proving pre-sale initial interest confusion. So in that case, again, what was alleged is there were actually fraudulent misrepresentations and failing to dispel the confusion. So those are much stronger facts. Those were facts that went to that for Select Comfort. And they contacted defendant's call centers. What about the issue of whether the district court made factual findings? For example, the district court said that even assuming some consumers will mistakenly click on a Warber Parker search, the ad, these consumers would then take time to meaningfully review the contents and layout of the website before taking any further action. Isn't that a factual finding? And if so, is that appropriate on a 12C motion? So again, I think on these contacts, I think you can even find it without that. You can even find a judgment on the pleadings without that. But here, 800 contacts, consumers were alleged to be those who buy contact lenses online. There are many cases, even ones that dismiss at this level, that once you have the other, that I said, right, no trademark, you hit Warby Parker's website and you see their trademark, that there's no confusion because it has to be, it just doesn't support the kind of confusion that he, that I believe his allegation is conclusory in that. And so while trademark infringement may have some fact-intensive issues, it doesn't mean that it can never be decided at the pleadings level. All right. Thank you, Ms. Ewing. Yes. Thank you. So briefly, my colleague began by saying that there are no decisions establishing liability under certain circumstances. Again, this is not about liability. This is about whether we have pled enough to get discovery. And Rescue.com is an internet case on AdWords that at the end of the decision makes it very clear that whether it's a benign practice or not, all these issues we've been discussing is a fact question for discovery. My adversary cited the Alzheimer's case. That was a bench trial where the judge heard surveys and testimony. That's where we want the opportunity. They can make their case that we haven't proved it, but we get the opportunity to try. And with respect to sophistication, every case they cited in their brief for the proposition that judges... very familiar, seemed to have been stolen from one and used by the other. So there was a presentation issue that I think isn't here. This is about ad positioning and how the search engine auction works. They were different contexts. That's right. But my point is that to make an argument based on Alzheimer's, where there's a full factual record, isn't quite fair because we haven't had the opportunity to do that. When we take discovery... What I'm saying is that they were able to plead at the very beginning that there was an unfair and bad faith usage of the marks because of the visual similarity of the marks that were adopted. So it was well beyond the ad auction situation where the landing page was actually labeled correctly. So that's a difference. But we have alleged bad faith as well. And the judge found that there was evidence of it. So I think in this case, again, with the two landing pages for the same exact thing that are different with no explanation as to why you would go through the time and effort of creating a special landing page for people that clicked on the link based on a search for 1-800 contacts, that's bad faith. And look, the Polaroid factors list bad faith as one of several factors. It is not a requirement for initial interest confusion that we show bad faith. We've alleged it, but it's a series of factors. And I'll just end by saying, I think it would be extraordinary in a case like this where it's not disputed that it's a very strong mark, we are direct competitors, it is exactly the same product. When you get a contact lens prescription, the prescription says the manufacturer and the measurements. So if you buy it from 1-800 contacts, you buy it from Orbi, it is exactly the same thing. So direct competitors, same product, strong mark, bad faith, and we can't even get to discovery, I think that would be extraordinary. Thank you. Thank you, Mr. Fishbein. Thank you both. We will take this case under advisement as well. And we have two other cases that are on for submission, so that concludes our argument calendar for this morning. So I think we are ready to adjourn.